IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN WILLIAMS, *et al.*, | : | Case No. 3:13 CV 02041 |
| Plaintiffs, | : | |
| v. | : | |
| | | AMENDED |
| AMANDA CROSBY, *et al.*, | : | MAGISTRATE'S REPORT |
| | | AND RECOMMENDATION |
| Defendants. | | |

## I. INTRODUCTION.

Pursuant to 72.2(a) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES, this case was referred to the undersigned Magistrate Judge for general pretrial supervision.  Pending is a Motion for Judgment on the Pleadings filed by all Defendants (Docket No. 21).  All Plaintiffs filed an Opposition and all Defendants filed a Reply to the Opposition (Docket Nos. 25 & 27).  For the reasons that follow, the Magistrate recommended that the Court grant Defendants' Motion for Judgment on the Pleadings in part.  The Magistrate amends the conclusion and further recommends that the court grant Defendants' Motion for Judgment on the Pleadings, in part, as amended.

## II. THE PARTIES

1.  Kathleen Williams (Kathleen) is a resident of Whitehouse, Ohio, a village in Lucas County, Ohio (Docket No. 1, § 6).

2.  Shawn Williams (Shawn), a resident of Whitehouse, Ohio, is Kathleen Williams' spouse (Docket No. 1, § 7).

3.  P.W., S. W., J. W., and K.W. are the minor children of Kathleen Williams and Shawn Williams (Docket No. 1, § 8).

4.  Whitehouse, Ohio, is an incorporated village in Lucas County, Ohio.  The village is a political subdivision as defined in OHIO REV. CODE § 2744.01(F).

5.  Defendant Mark McDonough is the chief of police for the Village of Whitehouse (Docket No. 1, § 10).  The police department is a political subdivision as defined in OHIO REV. CODE § 2744.01(F).

6.  Defendants Amanda Crosby, Randal Williams (Williams) and Ronald Shellhammer, were at all times relevant to these proceedings, police officers employed by the Village of Whitehouse (Docket No. 1,§§ 11, 12 and 13).

### III. THE FACTS

The facts presented by Plaintiffs are summarized as follows:

Plaintiff Kathleen, who was visibly pregnant, disciplined her eleven-year-old son by placing him in a "time out" on the front porch of their residence.  Defendant Crosby responded to a neighbor's call that the disciplined child had been "left outside" on the porch.  Upon arrival at the Plaintiffs' home, Defendant Crosby insisted that Plaintiff Kathleen provide the names and birth dates of all her children.  Plaintiff Kathleen refused to divulge the names and birth dates of her children and Defendants Crosby took her into custody.  Defendant Randall Williams assisted Plaintiff Kathleen in getting into Defendant Crosby's car.

Plaintiff Kathleen was placed in a holding cell at the Village of Whitehouse police station where she refused to give the names of her children to Defendant Crosby.  Plaintiff was eventually transported to the Maumee police station and charged with Obstructing Official Business, a violation

2

of OHIO REV. CODE §2921.13(A)[1].  Plaintiff Kathleen was taken before a judge who permitted her to post bond.  Plaintiff Kathleen was released to her husband, Plaintiff Shawn.

Defendant Crosby filed a criminal complaint against Plaintiff Kathleen, charging her with obstructing official business[2].  The prosecutor dismissed the case on January 8, 2013.

## VI. MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD OF REVIEW

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *Fritz v. Charter Township of Comstock,* 592 F.3d 718, 722 (6th Cir. 2010) (*citing Ziegler v. IBP Hog Market, Incorporated*, 249 F.3d 509, 511–512 (6th Cir.2001) (*citing Mixon v. Ohio*, 193 F.3d 389, 399–400 (6th Cir.1999)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (*citing JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir.2007) (internal citations and quotation marks omitted)).

The factual allegations in the complaint must be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal

---

[1]

(A)  No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:
> (1)    The statement is made in any official proceeding.
> (2)    The statement is made with purpose to incriminate another.
> (3)    The statement is made with purpose to mislead a public official in performing the public official's official function.

[2]

No person without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.  OHIO REV. CODE § 2921.31(A) (Thomson Reuters).

3

claim plausible, i.e., more than merely possible. *Id.* (*citing Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949–1950 (2009)). However, "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Id.* (*citing Hensley Manufacturing v. ProPride, Incorporated*, 579 F.3d 603, 609 (6th Cir.2009) (*quoting Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007)); *see also Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005–1006 (6th Cir. 2009)).

## VII. MUNICIPAL LIABILITY

Local governmental bodies may be sued under Section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Walsh v. Erie County Department of Job and Family Services,* 240 F.Supp.2d 731, 761 (N.D.Ohio,2003) (*citing Monell v. Department of Social Services*, 98 S.Ct. 2018, 2035-2036 (1978)). Furthermore, local governments "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* (*citing Monell*, 98 S.Ct. at 2025-2036; *citing Adickes v. S.H. Kress & Company*, 90 S.Ct. 1598, 1612 (1970) Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.").

Municipal liability is not based on the concept of *respondeat superior*. *Id.* Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. *Id.* In particular, a municipality cannot be held liable solely

because it employs a tortfeasor.  *Id.*  It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983. *Id.* (*citing Monell*, 98 S.Ct. at 2036).

Plaintiffs make no direct claims against Defendant Village of Whitehouse in the Complaint. Rather, such claims against Defendant Village of Whitehouse are framed in terms of *respondeat superior*.  Based on the *Monell* court's vicarious liability theory of *respondeat superior*, Defendant Village of Whitehouse may only be sued directly if Plaintiffs allege that a municipal policy of some nature caused a constitutional tort.  In other words, Defendant Village of Whitehouse may not be found liable simply because one of its employees or agents, Defendant McDonough, may have committed a single unconstitutional act.  The allegations in the Complaint do not comply with the official policy requirement intended to distinguish acts of the municipality from acts of employees of the municipality and therefore it fails to make it clear that Defendant Village of Whitehouse, through its deliberate conduct, is actually responsible for Plaintiffs' injuries.

Plaintiffs have failed to plead facts sufficient to plausibly allege that Defendant Village of Whitehouse's policies were the moving force behind the constitutional deprivations they suffered. The Magistrate recommends that the Court grant the Motion for Judgment on the Pleadings as to Defendant Village of Whitehouse.

## VIII. OFFICIAL CAPACITY CLAIMS.

When a municipal official is sued in his or her official capacity, the suit is in effect one against the municipality itself.  *Mallory v. City of Riverside, Ohio,* 2013 WL 6158407, *4 (S.D.Ohio,2013) (*citing Kentucky v. Graham*, 105 S.Ct. 3099, 3105 (1985)).  The fact that a state

5

actor was acting within the scope of his or her official duty does not make an action against him an official capacity action; however, the phrase "acting in their official capacities" is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury.  *Id.* (*citing Hafer v. Melo*, 112 S.Ct. 358, 361 (1991)).

Because the Village of Whitehouse is a Defendant, the Magistrate recommends that the Court dismiss the claims against Defendants Crosby, McDonough, Shellhammer and Williams in their official capacities.

### IX. PLAINTIFFS' FEDERAL CLAIMS.

Plaintiff has adequately alleged that each of the Defendants acted toward her under color of law, which is necessary and sufficient to enforce rights contained in the Constitution and rights that are defined by federal law.  Under 42 U. S.C. § 1983[3], Plaintiffs assert that (1) Defendants Crosby and Williams unlawfully arrested Plaintiff Kathleen; (2) Defendant Crosby used unreasonable force to effectuate the arrest; (3) Defendant McDonough failed to train his officers regarding when probable cause exists; and (4) Defendant Crosby initiated Plaintiff Kathleen's arrest without probable cause.

The Magistrate addresses the question of qualified immunity as a threshold issue because its resolution determines whether Defendants are able to avoid further proceedings.

---

[3]

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  42 U.S.C. § 1983 (Thomson Reuters 2014).

### A. QUALIFIED IMMUNITY STANDARD.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation[.]" *Bletz v. Gribble,* 641 F.3d 743, 750 (6ᵗʰ Cir. 2011) (*citing Mitchell v. Forsyth*, 105 S.Ct. 2806, 2814 (1985)). "Through the use of qualified immunity, the law shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " *Id.* (citing *Solomon v. Auburn Hills Police Department*, 389 F.3d 167, 172 (6ᵗʰ Cir.2004) (*quoting Anderson v. Creighton,* 107 S.Ct. 3034, 3038 (1987)). Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Id.* (*citing Ciminillo v. Streicher*, 434 F.3d 461, 466 (6ᵗʰ Cir.2006)).

In determining whether a defendant is entitled to qualified immunity, the court makes two inquiries:

(1)    "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[,]" and

(2)    was the right "clearly established" to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful.

*Id.* (*citing Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001), *overruled on other grounds by Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009)). Although Saucier mandated that these questions be addressed in order, that requirement has since been relaxed. *Id.* (*see Pearson*, *supr*a, 129 S.Ct. at 818) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.").

### 1. QUALIFIED IMMUNITY DOES NOT BAR THE PLAINTIFFS' CLAIM OF UNLAWFUL ARREST.

In Count 1, Plaintiff Kathleen argues that the arrest by Defendants Crosby and Williams was unlawful and unsupported by probable cause. Plaintiff Kathleen asserts that she was not engaged

7

in conduct that rises to the level of obstructing official business and that she had a clearly established right to be free from unlawful arrest without due process of law as required by the Fourth Amendment of the United States Constitution.

The Fourth Amendment protects the right of individuals to be free from improper arrest and detention. *Nerswick v. CSX Transportation, Incorporated*, 692 F.Supp.2d 866, 880 (S.D.Ohio,2010) *aff'd* 441 Fed. Appx. 320 (6th Cir. 2011).  In order to prevail on a Fourth Amendment wrongful arrest claim under Section 1983, a plaintiff must prove that probable cause for his or her arrest was lacking. *Id*. (*citing Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir.1999)).  The issue of "probable cause" turns on whether the "facts and circumstances within the officer's knowledge [ ] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (*citing Michigan v. DeFillippo*, 99 S.Ct. 2627, 2632 (1979); *see also Feathers v. Aey*, 319 F.3d 843, 851 (6th Cir.2003)).  A police officer has probable cause only when he or she discovers reasonably reliable information that the suspect has committed a crime. *Id.* (*citing Radvansky*, 395 F.3d at 305; *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir.2000)).

A person may not be arrested at home without a warrant, regardless of the existence of probable cause, absent exigent circumstances or the individual's consent. *Estate of Bing v. City of Whitehall*, 456 F.3d 555, 564 (6th Cir.2006) (*quoting United States v. Bradley*, 922 F.2d 1290, 1293 (6th Cir.1991), *overruled on other grounds by United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir.1993) (en banc ); *Thacker v. City of Columbus,* 328 F. 3d 244, 253 (6th Cir. 2003)).  There are four general categories of exigent circumstances justifying a warrantless entry into a home:

"(1)     hot pursuit of a fleeing felon,
(2)      imminent destruction of evidence,

8

(3)     the need to prevent a suspect's escape, and

(4)     a risk of danger to the police or others."

*Zar v. Payne,* 760 F.Supp.2d 779, 786 -787 (S.D.Ohio,2011) (*citing United States v. Rohrig*, 98 F.3d

1506, 1515 (6th Cir. 1996)).  The Court may consider three factors in determining whether exigent

circumstances existed:

(1)     whether the government has demonstrated that the need for immediate action would
        have been defeated if the police had taken the time to secure a warrant;

(2)     whether the government's interest is sufficiently important to justify a warrantless
        search; and

(3)     whether the defendant's conduct somehow diminished the reasonable expectation of
        privacy he or she would normally enjoy.

*Id.* (*citing Thorne v. Steubenville Police Officer*, 463 F.Supp.2d 760, 772 (S.D.Ohio 2006) (*citing*

*Rohrig*, 98 F.3d at 1518), *aff'd in part* 243 Fed.Appx. 157 (6th Cir.2007)).

After carefully considering the allegations in the Complaint, the Magistrate finds that,

liberally construed, Plaintiffs' Complaint sets forth plausible allegations  that Defendant Crosby

unlawfully or falsely arrested Plaintiff Kathleen[4].  Defendants Crosby and Williams lacked sufficient

knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable

precaution in the belief that an offense had been committed by Plaintiff Kathleen or that Plaintiff

Kathleen's non-responsiveness conformed with criminal activity.  Moreover, no exigencies existed

due to officer safety or safety of others.  Plaintiff Kathleen has sufficiently pled facts when taken

in the light most favorable to Plaintiffs show that the conduct of Defendants Crosby and Williams

violated a constitutional right that was clearly established insofar that a reasonable person in the

officer's position would know that the conduct complained of, by itself, was not unlawful.

---

[4]

        At this juncture in the proceedings, the Magistrate does not make a determination as to whether the
arrest was supported by probable cause or whether there were any deficiencies in the warrantless arrest.

Defendants Crosby and Williams are not entitled to qualified immunity and their Motion for Judgment on the Pleadings is denied as to Count 1 of Plaintiffs' Complaint.

### 2.  QUALIFIED IMMUNITY DOES NOT BAR PLAINTIFF'S CLAIM OF EXCESSIVE FORCE UNDER SECTION 1983.

In Count 2, Plaintiff Kathleen maintains that she was unlawfully detained and that Defendant Crosby used excessive force in the process.  Defendant Crosby asserts that she is entitled to qualified immunity because every reasonable officer in her position would have known that the arrest did not violate Plaintiff Kathleen's rights under the circumstances.

There is no doubt that "individuals have a constitutional right not to be subjected to excessive force during an arrest, investigatory stop, or other 'seizure' of his person." *Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir.2009) (*citing Graham v. Connor*, 109 S.Ct. 1865, 1871 (1989)).  Where the excessive force claim arises in the context of an arrest of a free citizen,[5] it is properly characterized as invoking the protections of the Fourth Amendment and its reasonableness standard.  *Graham*, *supra,* 109 S.Ct. at 1871.  Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Chappell, supra,* 585 F. 3d at 908 (*citing Graham*, 109 S.Ct. 1871-1872).

A plaintiff "may 'allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage.' " *Miller v. Sanilac*

---

[5]

Prisoners are protected from the use of excessive force by the Eighth Amendment.  Pre-trial detainees' rights stem from the Due Process Clause of the Fourteenth Amendment.  Free citizen's are protected under the Fourth Amendment. *See Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) *cert. denied*, 131 S.Ct. 601 (2010).

10

*County*, 606 F.3d 240, 252 (6th Cir.2010) (*quoting Morrison v. Board of Trustees of Green Township*, 583 F.3d 394, 400 (6th Cir.2009)).  However, the court must consider that not every push or shove, even if it may be seen as necessary in the peace of a judge's chambers, *Graham, supra,* 109 S. Ct. at 1872 (*citing Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973), violates the Fourth Amendment.  *Id.*  The court must take care not to substitute its judgment for that of the reasonable officer on the scene.  *Id.*  The court's calculus of reasonableness must include allowances for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.  *Id.*

Plaintiff Kathleen has not alleged direct excessive force against Defendant Williams,  that he actively participated in the use of the excessive force, that he supervised Defendant Crosby in the use of excessive force or that he failed to protect Plaintiff against the use of force by Defendant Crosby.  When taking in a light most favorable to Plaintiffs, there is no reason to suspect that Defendant Williams used excessive force.  Defendant Williams is entitled to judgment as a matter of law on Count 2, unreasonable use of force.

The question facing this Court therefore, is whether the use of force by Defendant Crosby was objectively reasonable in light of the circumstances confronting her when she responded to the Williams' household on September 15, 2012.  Defendants do not allege that Plaintiff Kathleen resisted or attempted to evade arrest.  Neither do they argue that Plaintiff Kathleen posed an immediate threat to their safety requiring an instantaneous decision or reaction.  Taking the pleaded facts in a light most favorable to Plaintiffs, despite Plaintiff Kathleen's non-resistance, Defendant Crosby forcefully removed Plaintiff Kathleen from the porch of her residence, grabbing Plaintiff Kathleen's arms and roughly applying the handcuffs.  When balancing the nature and quality of

11

Defendant Crosby's intrusion on Plaintiff Kathleen's Fourth Amendment interests, these allegations militate for a finding that Defendant Crosby used force that crossed the threshold between reasonable and excessive.  Defendant Crosby is not entitled to the shield of qualified immunity merely on the basis of the pleadings because the facts as alleged make out a clearly established constitutional violation of which a reasonable officer would have been aware.

The Magistrate recommends that the Court deny Defendant Crosby's Motion for Judgment on the Pleadings as to Count 2.

### 3.  QUALIFIED IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIM OF FAILURE TO TRAIN UNDER SECTION 1983.

Plaintiff Kathleen claims that the failure to require periodic training or establish a policy or training program may fairly be said to constitute a policy which actually caused her harm and for which Defendant McDonough may be liable.  Defendants assert the qualified immunity defense.

While Plaintiff Kathleen cannot be expected to know the details of Defendant McDonough's policies or programs prior to discovery, accepting the allegations in the Complaint as true, as the Court must on this Motion for Judgment on the Pleadings, the Magistrate finds that Plaintiffs have gone beyond the boilerplate recital of policy allegations and satisfied FED. R. CIV. P. 8[6] by alleging both a failure to train on what constitutes probable cause and a serious instance of misconduct.  On its face, the allegation of misconduct raises doubts as to sufficiency of the training and whether the

---

[6]

FED. R. CIV. P. 8(a) **Claim for Relief**, states:
A pleading that states a claim for relief must contain:
(1)     a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
(2)     a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3)     a demand for the relief sought, which may include relief in the alternative or different types of relief.

need for better training was so obvious that the failure to train would amount to deliberate indifference to the rights of the persons with whom they came in contact.

Taken in light of the specific context of this case, not as a broad general proposition, it would have been clear to a reasonable officer that the failure to train resulted in actions that were perhaps unlawful in the situation Defendant Crosby confronted.  Because such a constitutional violation was clearly established at the time of Plaintiff Kathleen's arrest, Defendant McDonough is not entitled to qualified immunity or judgment as a matter of law as to Count  III.

### 4.    QUALIFIED IMMUNITY DOES NOT BAR PLAINTIFF'S MALICIOUS PROSECUTION CLAIM UNDER 1983.

Plaintiff Kathleen asserts a claim for malicious prosecution under Section 1983, alleging that Defendant Crosby swore to the criminal complaint with full knowledge that she lacked probable cause.

The Sixth Circuit recognizes a constitutional claim of malicious prosecution under the Fourth Amendment, encompassing wrongful investigation, prosecution, conviction, and incarceration. *Ghaster v. City of Rocky River*, 913 F.Supp.2d 443, 466 (N.D.Ohio,2012) (*citing Barnes v. Wright*, 449 F.3d 709, 715–716 (6th Cir.2006)).  "The 'tort of malicious prosecution' is 'entirely distinct' from that of false arrest, as the malicious-prosecution tort 'remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process.' " *Id.* (*citing Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir.2010) (*quoting Wallace v. Kato*, 127 S.Ct. 1091, 1096 (2007)).

To establish a malicious prosecution claim under Section 1983, plaintiff must show that:

(1)    a prosecution was initiated against the plaintiff and that the defendant participated in the decision;
(2)    there was a lack of probable cause for the criminal prosecution;
(3)    the plaintiff suffered a deprivation of liberty as a consequence of the legal proceeding; and
(4)    the criminal proceeding was resolved in the plaintiff's favor.

13

*Neterkeht v. Longworth*, 2013 WL 3776579, *11 (S.D.Ohio,2013) *adopted by*, 2013 WL 4080727 (S.D.Ohio,2013) (*citing Sykes*, *supra*, 625 F.3d at 308–309).

Probable cause in this context has been defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion."  *United States v. McClain*, 444 F.3d 556, 562 (6th Cir.2005) *cert. denied*, 127 S.Ct. 580 (2006) (*quoting United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir.1993) (en banc) *cert. denied* 115 S. Ct. 97 (1994)).  Probable cause is established if there is an objectively reasonable basis for the belief that a crime has been committed. *Id*. (*citing McClain*, 444 F. 3d at 563). "[T]he establishment of probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' " *Id*. (*citing Ferguson*, *supra*, 8 F. 3d at 392) (*quoting Illinois v. Gates*, 103 S.Ct. 2317, 2335 n. 13 (1983) (internal quotation marks omitted)).

Defendant Crosby initiated a complaint charging Plaintiff Kathleen with obstructing official business under OHIO REV. CODE § 2921.31, a statute clearly inapposite to the facts of this case. Considering the facts alleged by Plaintiffs in the light most favorable to Plaintiff Kathleen, the inference is that Defendant Crosby arrested Plaintiff Kathleen in an effort to force her to comply with her inquiry and then penalize Plaintiff Kathleen for her failure to comply with her directive. Defendant Crosby lacked arguable probable cause for the arrest, a fact which she knew or should have known.  The criminal proceeding was resolved in Plaintiff Kathleen's favor when the prosecutor dismissed the charge.

Plaintiff Kathleen has shown, at least at this juncture, a Fourth Amendment constitutional violation for initiating a complaint without arguable probable cause.  In the qualified immunity context, it is well established that an arrest without probable cause violates the Fourth Amendment. Defendant Crosby is denied qualified immunity at this motion stage.

14

## VIII. STATE LAW CLAIMS.

Plaintiffs assert six state law claims against Defendants:  (1) common law malicious prosecution; (2) false arrest and imprisonment; (3) assault; (4) battery; (5) intentional and reckless infliction of emotional distress; and (6) loss of consortium.  In their Motion for Judgment on the Pleadings, Defendants Crosby, McDonough, Shellhammer and Williams argue that police officers are presumptively entitled to immunity under OHIO REV. CODE § 2744.03, unless the employees' acts or omissions were with malicious purpose, in bad faith or in a wanton or reckless manner.

In *Caruso v. State*, 136 Ohio App.3d 616, 737 N.E.2d 563 (2000), the Supreme Court of Ohio summarized the terms used in the immunity statute:

Malicious purpose encompasses exercising "malice," which can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct that is unlawful or unjustified.  *Kaylor v. Rankin,* 356 F.Supp.2d 839, 853 (N.D.Ohio,2005) (*citing Caruso,* 136 Ohio App. 3d at 620-621, 737 N.E.2d at 567) (*citing Jackson v. Butler County Board of County Commissioners*, 76 Ohio App.3d 448, 453-454, 602 N.E.2d 363, 366-367 (1991); *Teramano v. Teramano*, 6 Ohio St.2d 117, 118, 35 O.O.2d 144, 144-145, 216 N.E.2d 375, 376-377(1996); and *Bush v. Kelley's Incorporated*, 18 Ohio St.2d 89, 47 O.O.2d 238, 247 N.E.2d 745 (1969)).  If want of probable cause be proven, the legal inference may be drawn that the proceedings were actuated by malice.  *Melanowski v. Judy*, 102 Ohio St. 153, 155, 131 N.E. 360 (1921).

Bad faith has been defined as the opposite of good faith, generally implying or involving actual or constructive fraud or a design to mislead or deceive another.  *Kaylor,* 356 F. Supp. 2d at 853 (*citing Caruso,* at 621, 527).  Bad faith is not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.  *Id.*

Reckless conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of physical harm and that such risk is greater than that necessary to make the conduct negligent.  *Id.* (*citing Caruso*; *Hackathorn v. Preisse*, 104 Ohio App.3d 768, 771, 663 N.E.2d 384, 386 (1995); *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705, 707-708 (1990), *citing* 2 RESTATEMENT OF THE LAW 2D, TORTS, 587, Section 500 (1965)).  The term "reckless" is often used interchangeably with the word "wanton" and has also been held to be a perverse disregard of a known risk.  *Id.*  As to all of the above terms, their definitions connote a mental state of greater culpability than simple carelessness or negligence.  *Id.*

### A. STATUTORY IMMUNITY DOES NOT FORECLOSE PLAINTIFFS' CLAIM OF COMMON LAW MALICIOUS PROSECUTION.

Plaintiffs allege that Defendant Crosby maliciously instituted and continued Plaintiff Kathleen's prosecution on less than probable cause.

The Supreme Court of Ohio has recognized the tort of malicious prosecution much like the English common law before it.  *Mayes v. Columbus,* 105 Ohio App.3d 728, 736-737, 664 N.E.2d 1340, 1345-1346 (1995) (*citing Trussell v. General Motors Corporation*, 53 Ohio St.3d 142, 559 N.E.2d 732 (1990)).  The elements of malicious prosecution, the plaintiff must plead and prove by a preponderance of the evidence:  (1) malice in instituting or continuing the prosecution; (2) a lack of probable cause for undertaking the prosecution; and (3) termination of the prosecution in favor of the accused.  *Id.*

Plaintiff Kathleen has stated a claim against Defendant Crosby for malicious prosecution in common law.  At the first element, the Magistrate has already determined that the failure to have probable cause to arrest infers malice.  With respect to the second element, Plaintiff Kathleen set

16

forth sufficient facts or allegations that Defendant Crosby instituted Plaintiff Kathleen's criminal case with full knowledge that she did not have probable cause for the arrest. Finally, Defendants do not dispute that the prosecution was terminated in Plaintiff Kathleen's favor.

Construing the facts in a light most favorable to Plaintiffs, they have pleaded sufficient factual matter to render the legal claim for common law malicious prosecution against Defendant Crosby plausible. The Motion for Judgment on the Pleadings is denied as to Defendant Crosby and granted as to Defendants McDonough, Shellhammer and Williams on the claim for common law malicious prosecution.

### B. STATUTORY IMMUNITY DOES NOT FORECLOSE PLAINTIFFS' CLAIM FOR FALSE ARREST AND IMPRISONMENT.

Plaintiff Kathleen argues that Defendants Crosby, Williams and Shellhammer exploited an unlawful arrest, using it to effectuate a subsequent unlawful detention. Defendants Crosby, Williams and Shellhammer claim that there is a presumption that they are entitled to immunity.

Because the instant action is a matter between a private person and a police officer, the correct tort is false arrest. *Ruble v. Escola,* 898 F.Supp.2d 956, 983 (N.D.Ohio,2012). A claim for false arrest is indistinguishable in its essential elements from a claim for false imprisonment in that each claim requires proof that one was intentionally confined within a limited area, for any appreciable time, against his will and without lawful justification. *Id.* at 982-983 (*citing Evans v. Smith*, 97 Ohio App.3d 59, 646 N.E.2d 217, 224 (1994) (*citing Feliciano v. Kreiger*, 50 Ohio St.2d 69, 362 N.E.2d 646 (1977)). In false arrest, the action is based upon "some asserted legal authority to enforce the law (such as that possessed by a police officer), whereas the tort of false imprisonment is reserved for those situations in which detention is purely a matter between private persons." *Id.* at 983 (*citing Norwell v. Cincinnati*, 133 Ohio App.3d 790, 729 N.E.2d 1223 (1999) (*citing Evans*,

*supra,* 646 N.E.2d at 224 )).

To succeed on a claim of false arrest or imprisonment under Ohio law, a plaintiff must establish that the defendants were without legal authority to arrest and detain him or her and that the detention was not accomplished pursuant to accepted legal procedures. *Krantz v. City of Toledo Police Department*, 365 F.Supp.2d 832, 837 (N.D.Ohio,2005) (*citing McFinley v. Bethesda Oak Hospital*, 79 Ohio App.3d 613, 607 N.E.2d 936 (1992)).

Looking at the facts in a light most favorable to Plaintiffs, they have offered facts sufficient to rebut the presumption of immunity. Specifically, the inference has been drawn that the proceedings were actuated by malice since Plaintiff Kathleen was confined without lawful justification. Statutory immunity does not foreclose a cause of action against Defendant Crosby and Williams on this claim.

While Plaintiff Kathleen was detained, Defendant Shellhammer advised her that release was contingent upon providing the requested information or appearing before the court. Plaintiffs have not identified facts suggesting that Defendant Shellhammer took an active part in bringing about the arrest and/or imprisonment. Consequently, the Magistrate is not persuaded that he lost his qualified immunity.

**B. STATUTORY IMMUNITY DOES NOT FORECLOSE PLAINTIFFS' CLAIM FOR ASSAULT.**

An assault is "the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." *Kaylor, supra,* 356 F. Supp. 2d at 853 (*citing Smith v. John Deere Company*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (1993)). An assault is the beginning of an act which, if consummated, would constitute battery. *Id.* The act must also be such as to cause reasonable fear of immediate physical violence. *Id.* (*citing Matlock v. Ohio*

18

*Department of Liquor Control*, 77 Ohio Misc.2d 13, 665 N.E.2d 771 (1996) (*citing Ryan v. Conover*, 59 Ohio App. 361, 18 N.E.2d 277 (1938)).

Defendant Crosby contends that she cannot be held liable for having committed an assault where she believed that the amount of force used was appropriate.  That contention presupposes that Defendant Crosby acting lawfully when without Plaintiff Kathleen's consent, she forcibly removed Plaintiff Kathleen from the porch of her residence and arrested her.  Construing the facts in Plaintiff Kathleen's favor, Defendant Crosby acted without lawful justification.  Given such animus, the Magistrate cannot find that Defendant Crosby is entitled to judgment as a matter of law.

As for Defendant Williams, there are no assertions in the facts that suggest he threatened or attempted to harm or touch Plaintiff Kathleen offensively.  Moreover, there are no allegations that he acted maliciously or recklessly in arresting Plaintiff Kathleen.  He is entitled to statutory immunity as to Plaintiffs' assault claim.

### C.    STATUTORY IMMUNITY DOES NOT FORECLOSE PLAINTIFFS' CLAIM FOR BATTERY.

Here, Plaintiff Kathleen asserts that Defendants Crosby and Williams made harmful and offensive contact.

A person is subject to liability for battery when he or she "acts intending to cause a harmful or offensive contact, and when a harmful contact results."  *Kaylor, supra*, 256 F. Supp. 2d at 854 (*citing Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166, 167 (1988)).  Offensive contact is "contact which is offensive to a reasonable sense of personal dignity."  *Id.* (*citing Love*, 37 Ohio St. 3d at 99, 524 N.E.2d at 167) (*citing* RESTATEMENT (SECOND) OF TORTS § 118, cmt. B (1965) ("An arrest, whether with or without a warrant, usually involves conduct which, unless privileged, is an assault or battery.")).  In *Love*, the Ohio Supreme Court stated:  "The acts of subduing and handcuffing are undoubtedly offensive to a reasonable sense of personal dignity. The

contact involved is plainly intentional; one cannot accidentally handcuff or subdue another." *Id.*

In this case, Plaintiff Kathleen made sufficient allegations that Defendant Crosby exhibited some personal resentment that Plaintiff Kathleen would not answer her questions. She grabbed her and forcibly removed her from the porch, frisking and handcuffing her. At the station, Defendant Crosby badgered Plaintiff Kathleen for answers and refused to give her water, acts that were obviously offensive to Plaintiff Kathleen's sense of dignity. Construing the facts, as alleged, in Plaintiff Kathleen's favor, Defendant Crosby acted maliciously and therefore, the Magistrate cannot find that she is entitled to judgment as a matter of law as to Plaintiff Kathleen's battery claim.

As to Defendant Williams, Plaintiff Kathleen alleges that he assisted her in getting in Defendant Crosby's police car. Even construing the allegations against Defendant Williams in the light most favorable to Plaintiffs, there is not even an inference that his contact with Plaintiff Kathleen was offensive. The Magistrate concludes that Defendant Randall Williams is entitled to judgment on the pleadings as to Plaintiff Kathleen's battery claim.

### 4. STATUTORY IMMUNITY DOES NOT FORECLOSE PLAINTIFFS'S CLAIM OF INTENTIONAL/RECKLESS INFLICTION OF EMOTIONAL DISTRESS.

Plaintiff Kathleen alleges that Defendants Crosby, Randall Williams and Shellhammer intended to cause her family emotional distress through their actions. In the alternative, all Plaintiffs contend that Defendants Crosby, Williams and Shellhammer should have known that their actions would result in emotional distress.

Under Ohio law, a claim for intentional infliction of emotional distress requires proof that:

(1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff,

(2) the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community,

(3) the actor's actions were the proximate cause of the plaintiff's psychic injury, and

20

(4)     the mental anguish suffered by the plaintiff is serious and of a nature that no
        reasonable man could be expected to endure it.

*Kaylor, supra*, 256 F. Supp. 2d at 855 (*citing Burkes v. Stidham*, 107 Ohio App.3d 363, 375, 668

N.E.2d 982 (1995)).  Serious emotional distress requires an emotional injury which is both severe

and debilitating.  *Id*. (*citing Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983)).  The

Supreme Court of Ohio, in *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374–375, 453 N.E.2d 666

(1983), described what constitutes extreme and outrageous conduct:

> It has not been enough that the defendant has acted with an intent which is tortious
> or even criminal, or that he has intended to inflict emotional distress, or even that his
> conduct has been characterized by "malice," or a degree of aggravation which would
> entitle the plaintiff to punitive damages for another tort . . .  Generally, the case is
> one in which the recitation of the facts to an average member of the community
> would arouse his resentment against the actor, and lead him to exclaim,
> "Outrageous!" ... The liability clearly does not extend to mere insults, indignities,
> threats, annoyances, petty oppressions, or other trivialities.  *Id.*

The Magistrate finds that Defendant Crosby's conduct satisfies the *Yeager* test and is based

upon Defendant Crosby's knowledge that Plaintiff Kathleen was visibly pregnant and that Defendant

Crosby had neither a warrant for Plaintiff's arrest nor probable cause to arrest her.

The Magistrate finds that after construing the evidence most strongly in Plaintiffs' favor,

reasonable minds could come to a conclusion that Defendant Crosby's conduct could be

characterized by malice.  The Motion for Judgment on the Pleadings is denied as to Defendant

Crosby.

Plaintiffs' Complaint failed to state any outrageous conduct toward Plaintiff Kathleen on the

part of either Defendants Randall Williams or Shellhammer.  The Motion for Judgment on the

pleading is granted as to these Defendants.

**5.      STATUTORY IMMUNITY DOES NOT FORECLOSE THE LOSS OF CONSORTIUM CLAIMS**.

Plaintiffs propose two separate loss of consortium claims.  The first is on behalf of Plaintiff

Shawn and the second is on behalf of the children of Plaintiff Kathleen and Plaintiff Shawn, P.W., S.W., J.W., and K.W.

Section 1983 itself does not support a cause of action for loss of consortium; however, such a claim may be brought pendent to a Section 1983 suit where state law recognizes loss of consortium as an independent cause of action. *Pollard v. City of Columbus, Ohio,* 2013 WL 4678941, *10 (S.D.Ohio, 2013) (*citing Kinzer v. Metropolitan Government of Nashville*, 451 F.Supp.2d 931, 946–47 (M.D.Tenn. 2006)). Ohio recognizes the rights of minor children to recover for loss of parental consortium. *Snyder v. Guardian Automotive Products, Incorporated*, 288 F.Supp.2d 868, 876 (N.D.Ohio,2003) (*citing Rolf v. Tri State Motor Transit Company*, 91 Ohio St.3d 380, 383, 745 N.E.2d 424 (2001)). The claim is intended to compensate the child "for harm done or for losses suffered as a result of injury to the parent and the parent-child relationship." *Id.* (*citing Rolf*, 91 Ohio St. 3d at 382, 745 N.E.2d at 426).

Plaintiff Kathleen alleges that the impact of her arrest was that she was rendered incapable of functioning in the same capacity as she did before the arrest. The children's claims for loss of parental consortium are derivative and their success is tied to the success of the underlying claims of malicious prosecution, false arrest and imprisonment, and assault and battery. Based on the Magistrate's conclusions above, the children's claims for malicious prosecution fails as to Defendants McDonough, Shellhammer and Randall Williams; the children's claims for false arrest and imprisonment fail as to Defendant Shellhammer; the children's claims for assault fail as to Defendant Randall Williams; and the children's claims for battery fail as to Defendant Randall Williams.

As a final matter, Plaintiff Shawn claims that Plaintiff Kathleen has been unable to fulfill her duties as a direct and proximate result of Defendants' acts and omissions and he has suffered a loss

22

of spousal consortium.

Ohio law recognizes claims for loss of consortium by a spouse. *Ulmer v. Dana Corporation*, 200 F.Supp.2d 804, 823 (N.D.Ohio,2002) *aff'd* 115 Fed. Appx. 787 (6th Cir. 2004) (unreported) (*see Clouston v. Remlinger Oldsmobile Cadillac, Incorporated*, 22 Ohio St.2d 65, 258 N.E.2d 230 (1970)). These claims are derivative of, and thus frequently tied to the success of, the underlying claim. *Id.* (*see Urban v. Goodyear Tire & Rubber Company*, 2000 WL 1800679, at *6 (2000) (explaining that "liability elements of a loss of consortium claim are proven when the underlying tort is proven"); *but see Bowen v. Kil–Kare, Incorporated*, 585 N.E.2d 384, 391, 63 Ohio St.3d 84 (Ohio 1992) (noting that "a wife's loss of consortium claim is not necessarily defeated by a valid defense to her husband's claim against the tortfeasor")).

Plaintiff Shawn's loss of spousal consortium is a separate and distinct injury that is personal to him insofar as he suffered an indirect injury. At the same time, such claim is a derivative of the Plaintiff Kathleen's claims for malicious prosecution; false arrest and imprisonment; assault and battery. Liability on these claims must first be established before the trier of fact can decide the propriety of Plaintiff Shawn's claim. However, based on the Magistrate's conclusions, Plaintiff Shawn's claims for malicious prosecution fails as to Defendants McDonough, Shellhammer and Randall Williams; Defendant Shawn's claims for false arrest and imprisonment fail as to Defendant Shellhammer; Defendant Shawn's claims for assault fail as to Defendant Randall Williams; and Defendant Shawn's claims for battery fail as to Defendant Randall Williams.

## IX. PUNITIVE DAMAGES.

Defendants contend that a claim seeking punitive damages is derivative and must be dismissed where the remainder of constitutional claims against a party have been dismiss.

The Supreme Court has stated that punitive damages are appropriate under 42 U.S.C. § 1983

"when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 103 S.Ct. 1625, 1640 (1983).

Given the necessary consideration of these facts, it would be premature for the Court to dismiss the claim for punitive damages at this time where the pleadings sufficiently suggest facts that, if proven, may establish recklessness or evil motive. Thus, viewing all well-pleaded allegations in the Complaint in the light most favorable to Plaintiff, the Magistrate will deny Defendants' request for dismissal of the punitive damage claims at this stage of the litigation.

## X. CONCLUSION.

Based on the foregoing discussion, the Magistrate Judge recommends that the Court:

(1)    **GRANT** the Motion for Judgment on the Pleadings as to Defendant Village of Whitehouse in its entirety.

(2)    **GRANT** the Motion for Judgment on the Pleadings for the following Defendants:

| | | |
|---|---|---|
| Count 1 | Unlawful arrest | Defendants McDonough and Shellhammer. |
| Count 2 | Excessive force | Defendants McDonough, Shellhammer and Randall Williams |
| Count 3 | Failure to train | Defendants  Crosby, Shellhammer and Randall Williams |
| Count 4 | Malicious prosecution (MP) | Defendants McDonough, Shellhammer and Randall Williams |
| Count 5 | Common law MP | Defendants McDonough, Shellhammer and Randall Williams |
| Count 6 | False arrest | Defendants McDonough and Shellhammer |
| Count 7 | Assault | Defendants McDonough, Shellhammer and Randall Williams |
| Count 8 | Battery | Defendants McDonough, Shellhammer and Randall Williams |
| Count 9 | Emotional distress | Defendants McDonough, Shellhammer and Randall Williams |
| Count 10 | Loss of spousal and parental consortium. | Defendant Shellhammer |

(3)    **DENY** the Motion for Judgment on the Pleadings as to Defendant Crosby on the

following Counts:

| Count 1 | Unlawful arrest |
| Count 2 | Excessive force |
| Count 4 | Malicious prosecution |
| Count 5 | Common law malicious prosecution |
| Count 6 | False arrest |
| Count 7 | Assault |
| Count 8 | Battery |
| Count 9 | Intentional/reckless infliction of emotional distress |
| Count 10 | Loss of parental and spousal consortium. |

(4)    **DENY** the Motion for Judgment on the Pleadings as to Defendant McDonough on the following Counts:

| Count 3 | Failure to train |
| Count 10 | Loss of parental and spousal consortium. |

(5)    **DENY** the Motion for Judgment on the Pleadings as to Defendant Randall Williams on the following Counts:

| Count 1 | Unlawful arrest |
| Count 6 | False arrest. |
| Count 10 | Loss of parental and spousal consortium |

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:   March 21, 2014

25

**XII.** NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to the report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.