IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kathleen Williams, et al.,            Case No. 3:13 CV 2041

           Plaintiffs,            MEMORANDUM OPINION
                                        AND ORDER

      -vs-

                                            JUDGE JACK ZOUHARY

Amanda Crosby, et al.,

           Defendants.

This Court previously adopted those portions of the Magistrate Judge's Amended Report & Recommendation ("R&R") (Doc. 31) to which no objections had been made and the parties stipulated to dismissal without prejudice of claims against Defendant Mark McDounough (Doc. 39). Now pending before this Court are Defendant Officers Amanda Crosby ("Crosby") and Randall Williams' ("R. Williams") Objections to the Amended Report & Recommendation ("R&R") (Doc. 32). Plaintiffs opposed (Doc. 36), and Defendants replied (Doc. 38).

Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a de novo determination of the Magistrate Judge's findings. For the reasons below, this Court sustains in part and overrules in part Defendants' Objections. Defendants' Motion for Judgment on the Pleadings (Doc. 21) is granted in part and denied in part.

**BACKGROUND**

The Amended R&R accurately recites the Complaint's well-pled factual allegations, and this Court adopts that discussion in its entirety (Doc. 31 at 1–4). Briefly stated, Plaintiffs assert claims under Section 1983, alleging deprivations of a federal constitutional right on three grounds: (1) that Crosby and R. Williams caused Kathleen Williams ("K. Williams") to be unlawfully arrested -- Crosby because she lacked probable cause for the arrest, and R. Williams because, though told by Crosby of the reasons for the arrest, he failed to prevent the arrest; (2) that Crosby used excessive force before, during, and after the arrest; and (3) that Crosby "swore to the criminal complaint that initiated" K. Williams' prosecution for obstructing justice, an investigation which lacked probable cause and was dismissed by the prosecutor (Doc. 1 at ¶ 36). Plaintiffs assert related state law claims (*id*. at ¶¶ 39–55).

**STANDARD**

A complaint fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. In reviewing a complaint, the court must construe the pleading in the light most favorable to the plaintiff. *See Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998). *See also Frtiz v. Charter Township of Comstock*, 529 F.3d 718, 722 (6th Cir. 2010).

Defendants raise qualified immunity defenses to Plaintiffs' Section 1983 claims. The doctrine of qualified immunity shields from civil liability government officials who perform discretionary

functions if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004). When raised by way of a motion for judgment on the pleadings, qualified immunity must be denied when: (1) factual allegations taken in the light most favorable to the plaintiff show a constitutional violation, and (2) the relevant constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). When evaluating established law on a given constitutional tort claim, this Court must first look to the decisions of the U.S. Supreme Court, then to decisions of the Sixth Circuit, then to decisions of district courts within this Circuit, and, finally, to decisions of courts in other circuits. *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991).

## DISCUSSION

**Federal Claims -- Unlawful Arrest (Crosby**)

The Amended R&R concluded that "[a] person may not be arrested at home without a warrant, regardless of the existence of probable cause, absent exigent circumstances or the individual's consent" (Doc. 31 at 8) (citing *Estate of Bing v. City of Whitehall*, 456 F.3d 555, 564 (6th Cir. 2006)). Plaintiffs do not argue that K. Williams' arrest was unlawful because Crosby lacked a warrant and exigent circumstances (Doc. 25 at 6–14; Doc. 36 at 2–9). For their part, Defendants argue the Amended R&R should have analyzed the arrest for the existence of probable cause only, because "it is alleged on the face of the complaint that the arrest occurred *outside* the home" (Doc. 32 at 9) (emphasis in original).

The lawfulness of K. Williams' warrantless arrest does not depend on exigent circumstance, only probable cause. The Complaint alleges no facts suggesting that at any point during the encounter K. Williams entered her home. Instead, she was on the family front porch, and the Complaint

3

supports no plausible inference other than she was "exposed to public view, speech, hearing, and touch" from the moment the encounter with Crosby began. *United States v. Santana*, 427 U.S. 38, 42 (1976). *See also id*. at 40 & n.1, 42 (holding that an individual who stands on the threshold of a home may be arrested without a warrant upon probable cause). When an individual "voluntarily expose[s] himself [or herself] to the public . . . [her or she] eliminate[s] the . . . requirements of a warrant or exigent circumstances." *United States v. Saari*, 272 F.3d 804, 811 (6th Cir. 2001).

Moreover, while "[t]he front porch is the classic exemplar of an area adjacent to the home and to which the activity of home life extends," *Florida v. Jardines*, 133 S. Ct. 1409, 1415 (2013) (quotation mark omitted), that, of course, is not true in all cases. The Complaint lacks any factual allegations to suggest Plaintiffs' porch falls within the curtilage of their home. *See Hardesty v. Hamburg Twp.*, 461 F.3d 646, 652 (6th Cir. 2006). Was the front porch an enclosed porch? Was it shielded from public view by hedges? Did a fence separate the sidewalk from Plaintiffs' front yard or from the porch itself? The Complaint alleges no facts bearing on these questions.

Therefore, K. Williams' warrantless arrest would be permissible if supported by probable cause that she had committed a felony or a misdemeanor in Crosby's presence. *See United States v. Watson*, 423 U.S. 411, 418 (1976). Probable cause exists at the time of the arrest if an officer has knowledge of facts and circumstance about "which they had reasonably trustworthy information . . . sufficient to warrant a prudent [officer] in believing that the arrestee had committed or was committing an offense." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (brackets omitted). Because qualified immunity is potentially available in this case, "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible. Here, viewing [the well-pled factual allegations] in a light most favorable to [Plaintiffs, this Court] must determine whether a jury could conclude that a reasonable officer could

have believed that [K. Williams] had probably committed or [was] committing a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (internal citation omitted).

Crosby arrested K. Williams for violation of R.C. § 2921.31(A), which reads "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

Defendants identify no Ohio court that has found conduct of the type alleged here sufficient to support an arrest or conviction under R.C. § 2921.31(A). On the contrary, Ohio courts repeatedly state that a simple failure to answer police questioning, without more, does not amount to an "affirmative act" under the statute. *See, e.g.*, *State v. Grice*, 180 Ohio App. 3d 700, 703 (2009) ("The mere refusal to produce identification upon the request of a police officer can not support a conviction for obstructing official business."); *State v. Certain*, 180 Ohio App. 3d 457, 463 (2009) (collecting cases for the proposition that "Ohio courts have interpreted this statute to criminalize only affirmative acts, not the failure to act").

Each of the cases cited by Defendants for the proposition that Ohio courts have found "the *failure to act*" is "sufficient to uphold a *conviction* under the same statute as [K. Williams] was charged with violating" is distinguishable (Doc. 38 at 8) (emphasis in original). Each involved additional affirmative acts, beyond a simple refusal to answer police questioning, which the court found interfered with a police investigation. *See Palshook v. Jarrett*, 120 F. Supp. 2d 641, 650 (N.D. Ohio 2000) (finding probable cause for arrest under statute where Section 1983 plaintiff directed a friend to "get into the van rather than talk with the" investigating officer, fled from a *Terry* stop in a manner that gave the officer "grounds to believe she would harm" the officer, gave a false name in later contact with the same officer, and again directed her friend not to talk to the officer); *State v.*

5

*Kates,* 169 Ohio App. 3d 766, 775–76 (2006) (affirming conviction of defendant who, "during an investigation in which the defendant was identified as one of the drivers involved in a traffic accident, . . . had walked away from [the investigating officer], ignoring his command to stop," and collecting similar cases); *City of N. Ridgeville v. Reichbaum,* 112 Ohio App. 3d 79, 81 (1996) (affirming conviction of defendant who refused to identify himself, "repeatedly interrupted" an officer attempting to interview the suspected domestic-violence victim, refused to be led away from the victim so that the victim could be questioned, and had to be "subdued" by officers); *State v. Herron*, 2011 WL 281130, at *5 (Ohio Ct. App. 2011) (affirming conviction where defendant interfered with police by "persistent[ly] screaming and yelling at [an officer] from a distance of seven feet, while [the officer] was attempting to focus on multiple urgent tasks requiring her attention," including struggling with an individual who nearly ran down a police officer during a chaotic traffic stop in connection with a shooting investigation); *State v. Jeter*, 2005 WL 927013, at ** 1–2 (Ohio Ct. App. 2005) (affirming conviction where defendant revealed an undercover officer's police status during a prostitution sting by shouting to another suspected john "she is the police" five or six times "at the top of his voice"); *Dayton v. Turic*, 2005 WL 78498, at*5 (Ohio Ct. App. 2005) (affirming arrest where defendant refused to identify herself and walked away from police investigating an altercation at a subway despite being asked by police to stop); *State v. Melton*, 2004 WL 2306565, at *5 (Ohio Ct. App. 2004) (affirming conviction where defendant who, suspected of selling illegal transfers on a rail car, "became loud . . . yelled that he paid his fare[,] . . . refused to cooperate with the officers" and eventually engaged in a struggle with officers attempting to arrest him); *State v. Cobb*, 2003 WL 21360421, at **2–3 (Ohio Ct. App. 2003) (affirming conviction where defendant told police only his middle and last names, failed to disclose his social security number, and provided an incorrect birth date "immediately after fleeing from police, and while they attempted to discover his identity so that

he could be cited, [because] it is at least reasonable to infer that he did these acts with the purpose of preventing, obstructing, or delaying the issuance of a jaywalking citation").

Here, by contrast, the Complaint alleges that Crosby arrived at Plaintiffs' residence to find K. Williams spending a "peaceful" Saturday on her front porch chatting with neighbors (Doc. 1 at ¶ 15). Crosby explained that a neighbor had phoned in a "complaint involving one of the Williams children" (*id*. at ¶ 16). No factual allegations suggest the child had been "crying" or was "locked out" of the house on the front porch. K. Williams explained the purpose of the timeout, and that a family therapist had recommended use of timeouts. Crosby repeatedly requested "the names and birth dates of all the Williams children." K. Williams repeatedly refused to share that information (*id*. at ¶¶ 16–17) Drawing inferences from that exchange in Plaintiffs' favor, K. Williams declined to respond to Crosby's request -- no more, no less.

The Complaint does not allege that K. Williams: gave false or incomplete information (as in *Palshook* and *Cobb*); became verbally or physically abusive (as in *Herron* and *Melton*); walked away from Crosby despite being told to stop (as in *Kates* and *Turic*); or told others nearby not to talk to Crosby or otherwise interfered with Crosby's attempts to question others on the scene (as in *Palshook* and *Reichbaum*). *See also Marsili v. Vill. of Dillonvale*, 2014 U.S. Dist. LEXIS 65831, at \*\*46–47 (N.D. Ohio 2014) (finding probable cause for arrest where Section 1983 plaintiff had repeatedly interrupted officers' questioning of a witness); *State v. Fort*, 2003-Ohio-1075, at ¶¶ 28–29 (Ohio Ct. App. 2003) (affirming conviction where defendant whose unwanted questioning of an officer at the scene of a traffic stop caused one officer to be "pull[ed] . . . away from the three subjects he was investigating for the initial traffic stop" in order to urge the defendant to move along).

Defendants' alternative argument, that Crosby had probable cause to support K. Williams' arrest for violating R.C. § 2921.29, likewise fails. That statute does not "require[] a person to answer

any questions beyond that person's name, address, or date of birth," like the names and ages of K. Williams' children. R.C. § 2921.29(C). *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cnty.*, 542 U.S. 177 (2004), is inapt because K. Williams was not arrested for failure to identify herself, but only for conduct which Ohio law clearly states is not a violation of the statutes cited by Defendants.

Finally, Defendants have not established that, as a matter of law, the community caretaking-exception applies to defeat the unlawful arrest claim. That doctrine justified Crosby in detaining K. Williams to question her about the neighbor's complaint. But Plaintiffs' unlawful-arrest claim relates to the arrest, not the fact that Crosby approached K. Williams to question her about the neighbor's complaint.

In the absence of any identified Ohio cases or statutes holding that K. Williams could have been arrested simply for declining to answer questions about her children, and given the repeated statements to the contrary in the Ohio cases, a reasonable officer would not find K. Williams' arrest supported by probable cause. It is clearly established law that a warrantless arrest, unsupported by probable cause or some other applicable exception to the warrant requirement, violates the Fourth Amendment.

**Federal Claims -- Unlawful Arrest (R. Williams)**

The Amended R&R recommends that this Court deny Defendants' Motion with respect to the Section 1983 unlawful arrest claim leveled at R. Williams (Doc. 31 at 9). But the Amended R&R does not separately examine R. Williams' role in the arrest. The Complaint alleges that R. Williams arrived "[s]hortly after Kathy was frisked and handcuffed" (Doc. 1 at ¶ 18). Construing the Complaint in Plaintiffs' favor, Crosby then told R. Williams about the sole basis for the arrest -- that K. Williams

8

had politely refused to divulge her children's names and birth dates. "[R.] Williams assisted in Kathy's arrest," helping place K. Williams in Crosby's cruiser.

Plaintiffs argue that "[i]f Crosby's arrest of Kathy was indeed without probable cause, and Williams was apprised of the facts surrounding the arrest[] as Plaintiffs allege, then Williams is just as liable as Crosby" on the unlawful arrest claim because "[l]aw enforcement officials have a duty to intervene and protect the constitutional rights of citizens from infringement by other law enforcement officers" (Doc. 36 at 14–15) (internal citation omitted). *See also* Doc. 25 at 5–6.

Plaintiffs urge a duty on R. Williams to intervene at an exceedingly high level of generality. In fact, the within-Circuit cases on which Plaintiffs rely reveal an officer has a duty to intervene to prevent fellow officers from summarily punishing (*i.e.*, beating) a detainee. *See Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982). Even if R. Williams' failure to release K. Williams is a constitutional violation, it was not clearly established under Circuit precedent in September 2012. R. Williams is entitled to qualified immunity on the unlawful arrest claim.

**Federal Claims -- Excessive Force (Crosby)**

Plaintiffs allege Crosby placed K. Williams "under arrest by grabbing her arms and forcefully removing [her] from the porch of her residence," leading her to the patrol car, where she was frisked and handcuffed in a way that "aggravated a back injury that [K. Williams] had suffered a few days previous" (Doc. 1 at ¶ 17). K. Williams offered absolutely no physical resistance (*id.* at ¶ 30).

Noting that "Crosby forcefully removed [K. Williams] from the porch of her residence, grabbing [her] arms and roughly applying the handcuffs," and considering that K. Williams had not resisted arrest, the Amended R&R recommends this Court deny the Motion with respect to the Section 1983 excessive force claim (Doc. 31 at 10–11). Defendants object to that conclusion, arguing all the allegations of excessive force relate to unremarkable uses of force, not objectively unreasonable, that

9

accompany all arrests (Doc. 32 at 12–13). Plaintiffs argue that because K. Williams' arrest was unlawful, "Crosby was not justified in placing her hands on [K. Williams] at all. . . . [A]ny amount of force used to effectuate the unlawful arrest is itself a violation of the [F]ourth [A]mendment" (Doc. 36 at 10). *See also* Doc. 25 at 14–15.

This Court examines the force used in connection with the arrest by considering "(1) the severity of the crime at issue; (2) whether [K. Williams] posed an immediate threat to the safety of the police officers or others; and (3) whether [K. Williams] actively resisted arrest or attempted to evade arrest by flight." *Livermore v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007). "'[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

This Court rejects Plaintiffs' *per se* approach to analyzing the excessive force claim -- that *any* amount of force applied to carry out an unlawful arrest is excessive force. At worst, Plaintiffs approach is unsupported by any case law. *See Schiller v. Strangis*, 540 F. Supp. 605, 617 (D. Mass. 1982) (considering lack of probable cause to effectuate an arrest a relevant, but not dispositive, factor in evaluating an excessive force claim). At best, Plaintiffs' approach shows a constitutional violation of a right not clearly established in September 2012. *See, e.g.*, *Neague v. Cynkar*, 258 F.3d 504, 508 & n.2 (6th Cir. 2001) (holding that "when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment," but not opining on use of similar force claim following an unlawful arrest); *Young v. Barrett*, 1990 U.S. App. LEXIS 15184, at \*\*12–13 (6th Cir. 1990) (declining to address reliance on *Schiller* because material factual disputes existed in any case under general *Graham* excessive force analysis).

Moreover, Plaintiffs' excessive force claim is evaluated under so-called segmented analysis. Under that approach, events leading up to use of force generally are irrelevant to determining whether the officer's use of force amounts to a constitutional violation. *See, e.g.*, *Chappell v. City Of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009) (explaining that a court examining an excessive force claim must consider only an officer's "split-second judgments immediately prior to using deadly force. Because it is the reasonableness of the 'seizure' that is the issue, not the reasonableness of the [officer's] conduct in time segments leading up to the seizure, the district court properly held that any fact issues relating to the issuance of the warrant and initial entry into the . . . residence [where deadly force was used] are immaterial").

Under the *Graham* factors, Crosby is entitled to judgment as a matter of law on Plaintiffs' excessive force claims. Plaintiffs' claim that Crosby "grabb[ed K. Williams'] arm and forcefully remov[ed] her from the porch" is vague, and Plaintiffs do not argue this initial contact caused any injury or was violent. That amount of force, as a matter of law, was not objectively unreasonable.

To state a claim that Crosby used excessive force in handcuffing K. Williams, Plaintiffs must plausibly allege "(1) [K. Williams] complained the handcuffs were too tight; (2) [Crosby] ignored those complaints; and (3) [K. Williams] experienced some physical injury resulting from the handcuffing." *O'Malley v. City of Flint*, 652 F.2d 662, 671 (6th Cir. 2011). The Complaint lacks an allegation that K. Williams complained about the handcuffs, much less that Crosby ignored those complaints. On the contrary, the Complaint alleges that Crosby first learned of Plaintiffs' back injury at the Whitehouse Village police station, and even then only in the context of K. Williams' requests that she be allowed to lean against a cell wall rather than sit on a holding cell bench, as Crosby instructed, because "sitting aggravated her back pain" (Doc 1 at ¶ 20). The Complaint contains no allegation that K. Williams informed Crosby the handcuffs aggravated her back pain or caused her

11

any other pain. For all that the Complaint reveals, K. Williams never complained about being handcuffed. "In the absence of an obvious physical problem caused by the handcuffs or a plea by the defendant to loosen them, it is fair to ask how a reasonable officer should know that a problem has occurred. These [alleged] facts thus do not rise to the level of unconstitutionally excessive force." *Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005).

### Federal Claims -- Malicious Prosecution (Crosby)

The Complaint alleges Crosby "maliciously instituted and continued Kathy's prosecution [for obstructing official business] on less than probable cause" (Doc. 1 at ¶ 40), a prosecution that eventually ended with the prosecutor's decision in January 2013 to dismiss the charge (*id*. at ¶ 26). The Amended R&R concluded that all elements of malicious prosecution were met, including that "Crosby arrested [K. Williams] in an effort to force her to comply with [Crosby's] inquiry and then penalize [K. Williams] for her failure to comply with [Crosby's] directive" to provide her children names and birth dates (Doc. 31 at 13–14). Defendants oppose this finding on a number of grounds (Doc. 32 at 13–14). *See also* Doc. 21 at 22–23; Doc. 27 at 3; Doc. 38 at 9–12.

To state a Section 1983 malicious prosecution claim, the Complaint must adequately allege: (1) Crosby "made, influenced, or participated in the decision to prosecute"; (2) the prosecution for obstruction of official business lacked probable cause; (3) K. Williams suffered a deprivation of a protected liberty interest, beyond the initial seizure; and (4) the criminal prosecution was resolved in [K. Williams'] favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010) (brackets omitted). Despite the tort's label, "malice is not an element of a [Section] 1983 suit for malicious prosecution." *Id*. at 310.

As explained above, the Complaint adequately alleges that the Village's prosecution of K. Williams lacked probable cause at the time of the arrest. Because the Complaint alleges, at most

12

that K. Williams continued to refuse to answer Crosby's questions while in custody, probable cause did not exist later when the charge was filed. *See Thacker v. City of Columbus*, 328 F.3d 244, 261 (6th Cir. 2003) (explaining "probable cause is assessed based on the facts and circumstances known at the time the offense is charged").

Still, Crosby is entitled to qualified immunity on the malicious prosecution claim. To recap, the Complaint alleges that after appearing before a Maumee municipal court judge, K. Williams was "released to her husband on bond," and had to make several court appearances before the January 2013 *nolle prosquei* (Doc. 1 at ¶¶ 25–26). "[P]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about) the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Saylor v. Bd. of Educ. of Harlan Cnty., Ky.*, 118 F.3d 507, 515–16 (6th Cir. 1997). If it does not, qualified immunity bars a Section 1983 claim.

Less than one year prior to the arrest in this case, the Sixth Circuit explained that "[t]raditionally, [malicious prosecution] claims entail defendants who are detained prior to trial." *Fisher v. Dodson,* 451 F. App'x 500, 502 (6th Cir. 2011). The court in *Fisher* noted that the Sixth Circuit has neither accepted nor rejected the "continuing-seizure" doctrine, which doctrine may support a finding that a Section 1983 plaintiff suffered a liberty deprivation during the pendency of a state criminal prosecution when obliged to attend court proceedings or, as a condition of pre-trial release, forgo travel outside of the trial court's territorial jurisdiction. *Id.* Prior to *Fisher*, the Sixth Circuit had noted other circuits, embracing the continuing-seizure doctrine, find bond conditions sufficient to establish a constitutional deprivation; the Sixth Circuit expressly declined to decide whether to follow suit. *See Johnson v. City of Cincinnati*, 310 F.3d 484, 492–93 (6th Cir. 2002). No other published Sixth Circuit opinions have taken up the question that the court in *Johnson* expressly

13

declined to answer. *See also Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177–78 (6th Cir. 1988) (discounting for purposes of qualified immunity analysis the decisions of other circuit courts or district courts in other circuits).

For their part, Plaintiffs point to no case law -- none -- either within this Circuit or outside -- holding bond conditions and the obligation to attend court proceedings suffices for purposes of the malicious prosecution deprivation element. Far from being clearly established in September 2012, this point of law was (and remains) expressly unsettled in this Circuit.

**State Law Claims -- Statutory Immunity**

Because this Court finds the Complaint adequately alleges Crosby lacked probable cause to arrest K. Williams, it rejects Defendants' claims that statutory immunity applies to bar all of Plaintiffs' remaining state-law claims. An employee of an Ohio political subdivision is immune from a damages suit seeking redress for injuries "caused by any act or omission in connection with a governmental or proprietary function." R.C. § 2744.03(A)(6). Statutory immunity does not apply if "the employee's acts or omissions were with malicious purposes." *Id*. § 2744.03(A)(6)(a). A jury may infer, under the facts alleged in the Complaint, the Officers acted with malice in connection with an arrest made without probable cause. *See* Doc. 31 at 15 (citing *Melanowski v. Judy*, 102 Ohio St. 153, 155 (1921)).

**State Law Claims -- Malicious Prosecution (Crosby)**

For similar reasons, this Court rejects Defendants' objection to the Amended R&R's treatment of Plaintiffs' state-law malicious prosecution claim. "[T]he elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.*, 53 Ohio St. 3d 142, 146 (1990), *overruled in part on other grounds by Robb v. Chagrin Lagoons Yacht Club*,

14

75 Ohio St. 3d 264, 270 (1996), *as recognized in Jacob v. Fadel*, 2006-Ohio-5003, at ¶ 11 (Ohio Ct. App. 2006).

Plaintiffs allege sufficient facts to support a state-law malicious prosecution claim. First, "the absence of probable cause is the gist" of a malicious prosecution claim, *Mayes v. City of Columbus*, 105 Ohio App. 3d 728, 737 (1995), which the Complaint adequately alleges, satisfying the first and second elements of the malicious prosecution tort. In addition, "an unconditional, unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused." *Ash v. Ash*, 72 Ohio St. 3d 520, 522 (1995). *See also Douglas v. Allen*, 56 Ohio St. 156, 160–61 (1897) (finding a *nolle prosquei* sufficient to satisfy state-law malicious prosecution's termination element).

**State Law Claims -- False Arrest (Crosby and Williams)**

The Amended R&R cites the correct legal standard for Plaintiffs' state-law false arrest claim (Doc. 31 at 17–18) (noting the claim requires factual allegations that "one was intentionally confined within a limited area, for any appreciable time, against [the plaintiff's] will and without lawful justification" (citing *Ruble v. Escola*, 898 F. Supp. 2d 956, 983 (N.D. Ohio 2012))). Defendants argue the Complaint fails to adequately allege that Crosby lacked legal authority for the arrest. Because this Court finds the Complaint adequately alleges Crosby lacked probable cause for the arrest, and that R. Williams knew the arrest lacked probable cause, it rejects Defendants' arguments, and finds the other elements of the false arrest claim adequately alleged as against Crosby and R. Williams.

**State Law Claims -- Assault & Battery (Crosby)**

The Amended R&R recommends denying Defendants' Motion with respect to Plaintiffs' assault and battery claims against Crosby (Doc. 31 at 18–20). This Court agrees. "The force an

15

officer uses to subdue and handcuff a suspect, unless privileged, constitutes an assault or battery." *Krantz v. City of Toledo Police Dep't*, 197 F. App'x 446, 451 (6th Cir. 2006) (citing *Love v. City of Port Clinton*, 37 Ohio St. 3d 98, 98 (1988)). Because the Complaint adequately alleges Crosby arrested K. Williams without probable cause, the uses (or threatened uses) of force that underlie the assault and battery claims were not privileged and, further, malice can be inferred from the unlawful arrest for purposes of the malice exception to statutory immunity.

### State Law Claims -- "Intentional and Reckless Infliction of Emotional Distress" (Crosby)

Observing that K. Williams was visibly pregnant and Crosby "had neither a warrant for Plaintiff's arrest nor probable cause to arrest her," the Amended R&R recommends Defendants' Motion be denied with respect to the emotional distress claims (Doc. 31 at 21). Defendants argue statutory immunity applies, that Crosby had probable cause for the arrest, and that in any event the conduct alleged fails to meet the "outrageous" threshold for an emotional distress claim. Plaintiffs, in turn, assert that the facts as alleged "demonstrate a genuine issue as to whether the Plaintiffs can prove that Crosby's actions and omissions were with malicious purpose, in bad faith, or [undertaken] in a wanton or reckless manner" (Doc. 36 at 19). *See also* Doc. 25 at 21–22 (same).

The Complaint fails to state a claim for intentional infliction of emotional distress. In Ohio, "[l]iability [on such a claim] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 6 Ohio St. 3d 369, 375 (1983). Intentional or malicious conduct, or conduct which bears "the degree of aggravation which would entitle the

16

plaintiff to punitive damages for another tort[,]" does not suffice. *Id.* at 374–75. Nor does "routine conduct" incidental to an arrest and booking. *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 678 (6th Cir. 2005). The Complaint alleges K. Williams was grabbed and handcuffed, forced to sit in uncomfortable postures that aggravated her back injury, was continually questioned about her childrens' names and birth dates, and was subjected to loud "headbanging" music during the car ride between the two police stations. Even though K. Williams was visibly pregnant and (eventually) told Crosby of her back injury, none of the alleged conduct reaches the extreme conduct required by Ohio law. Plaintiffs make no effort in Opposition to the Motion (Doc. 25 at 21–22) or the Objections (Doc. 36 at 19) to show the "outrageousness" standard is satisfied, focusing instead on statutory immunity.

### State Law Claims -- Loss of Consortium (Crosby and Williams) and Punitive Damages

Defendants argue that because they are entitled to judgment on the pleadings with respect to all other claims, the derivative loss of consortium claims must be dismissed (Doc. 32 at 17). For the same reason, Defendants object to the Amended R&R's conclusion with respect to punitive damages (*id.*). Because claims remain against Crosby and R. Williams, loss of consortium claims derivative of those surviving claims also remain, as do requests for punitive damages on surviving claims.

### CONCLUSION

For these reasons, Defendants' Objections (Doc. 32) to the Amended R&R are sustained in part and overruled in part. Defendants' Motion for Judgment on the Pleadings (Doc. 21) is granted in part and denied in part. The following claims remain: (1) Section 1983 unlawful arrest claim as to Crosby; (2) state-law malicious prosecution claim as to Crosby; (3) state-law false arrest claim as to Crosby and R. Williams; (4) state-law assault as to Crosby; (5) state-law battery as to Crosby; and (6) related state-law loss of consortium and punitive damage claims.

Discovery may reveal that all evidence points to K. Williams having done more than just politely declining to answer Crosby's questions.  Or it may not.  Similarly, discovery may reveal that there is no admissible evidence that R. Williams knew of the basis for K. Williams' arrest.  R. Williams may well be immune, as a matter of state law, from the remaining state-law claim against him.   But, early as it is in these proceedings, this Court must accept well-pled factual allegations as true.  Having done so, this Court concludes claims remain against Crosby and R. Williams.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

August 12, 2014